## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KAREN KLOTZBACH-PIPER,      :
     :
     Plaintiff,      :      Civil Action No.:      18-1702 (RC)
     :
     v.      :      Re Document No.:      4
     :
NATIONAL RAILROAD PASSENGER      :
CORPORATION, *dba* AMTRAK      :
     :
     Defendant.      :

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

## I. INTRODUCTION

Plaintiff Karen Klotzbach-Piper brought this suit against Defendant the National Railroad Passenger Corporation ("Amtrak") on July 20, 2018, claiming that she was discriminated against on the basis of her gender, age, and disability while working at Amtrak between 2014 and 2018. Amtrak now moves to dismiss five of the ten claims Klotzbach-Piper brings in her complaint. Amtrak argues that Klotzbach-Piper's claims of hostile work environment based on gender and age are time-barred, that Klotzbach-Piper failed to exhaust her administrative remedies on any claims for retaliation occurring after August 2016, and that her claim of discrimination on the basis of disability should be dismissed both as time-barred and for failure to exhaust administrative remedies. The Court grants the motion to dismiss as to retaliation occurring after August 2016 because it finds that Klotzbach-Piper did not properly exhaust her administrative remedies as to any such claim. However, because Defendants have failed to meet their burden on both their timeliness and exhaustion arguments, the Court denies the motion to dismiss the hostile work environment and disability discrimination claims.

## II. BACKGROUND[1]

### A. Klotzbach-Piper's Work at Amtrak

Karen Klotzbach-Piper is a 56-year-old female employee of Amtrak. Compl. ¶¶ 7, 10, ECF No. 1. Klotzbach-Piper first joined Amtrak in 1986. *Id.* ¶ 10. Between 1998 and 1999, Klotzbach-Piper was employed as a locomotive engineer for the company. *Id.* ¶ 11. From 1999 to March 2014, she worked in a management position with Amtrak in Delaware. *Id.* ¶ 12. In March 2014, Klotzbach-Piper resigned her management position in order to return to her previous work as a locomotive engineer. *Id.* ¶ 13. Klotzbach-Piper asked for a transfer to Jacksonville, Florida, *id.* ¶ 14, and was warned prior to the transfer that "she would not be welcome the[re] due to her age and gender." *Id.* ¶ 15.

In order to obtain an up-to-date engineer's license, Klotzbach-Piper completed locomotive engineer training school on May 19, 2014. *See id.* ¶¶ 17–18. She then reported to the Jacksonville Amtrak crew base on May 26, 2014 for orientation and to continue the process of obtaining her full engineer certification. *Id.* ¶ 18. As part of that process, Klotzbach-Piper would "receive[] daily evaluations by a peer engineer that was specially trained to handle student engineers[,]" and would ultimately complete qualifying trials on specific track segments to obtain the certification. *Id.* ¶ 21.

From the very start, Klotzbach-Piper alleges that she was subjected to various and repeated acts of discrimination by other Amtrak employees. *See generally id.* Klotzbach-Piper alleges that an employee she worked alongside between June and July 2014 called her a "carpet bagger" and said she should "rent a house instead of buying because she wouldn't be staying that

---

[1] On a motion to dismiss for failure to state a claim, the Court accepts as true the factual allegations in the complaint and construes them liberally in the Plaintiff's favor. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).

long." *Id.* ¶ 26. After changing routes in August 2014, Klotzbach-Piper worked alongside two

other employees who, she alleges, proceeded to subject her to "a constant barrage of degrading

and mean treatment because she was a woman and older than they were." *Id.* ¶ 31. That

treatment included creating distractions to break her concentration while she was operating the

train, *id.*, repeated sexist and ageist comments, *id.* ¶¶ 31, 33, 36, unwanted touching, *id.* ¶ 33, and

sometimes kicking, *id.* ¶ 40. Between June and December 2014, Klotzbach-Piper reported the

behavior to both her union representative, *id.* ¶ 32, a road foreman, Richard Nunziato, *id.* ¶ 34,

and an assistant superintendent, *id.* ¶ 36, to no avail.

In January 2015, Klotzbach-Piper lodged a formal complaint with her union

representative. *Id.* ¶ 42. She alleges that the employees she complained about retaliated against

her as a result. *Id.* ¶ 43. The same month, she was placed on a new schedule with a different

locomotive engineer, Sharif Ahmed, who "did not allow talking in the locomotive," *id.* ¶ 45, did

not answer her questions, *id.* ¶¶ 45, 47, and did not allow her to operate with any notes, *id.* ¶ 51.

She alleges that Ahmed treated her differently because of her sex, *id.* ¶ 46, and that she

complained about "the 'silent' treatment" to both her union representative and the assistant

superintendent, *id.* ¶¶ 48–49.

On May 1, 2015, Klotzbach-Piper rode with and was evaluated by road foreman Matt

Reinert. *Id.* ¶ 52. Reinert told Klotzbach-Piper she was "right on target to qualify," but that she

"needed to humble herself when operating with Ahmed because he didn't appreciate her

attitude." *Id.* Around that time, Klotzbach-Piper came to learn that Reinert was a registered sex

offender. *Id.* ¶ 53. She brought the matter to the attention of the general chairman of her union,

who confirmed Reinert's status but told her that Reinert was "allowed to be only in the

locomotive" and did not have any contact with passengers. *Id.* ¶ 57. At some point between

May and July 2015, Klotzbach-Piper reported to Nunziato that she had seen Reinert on a platform "with a young man about the age of 14-15 years old." *Id.* ¶ 59. Nunziato "told her it was best if she just kept her mouth shut because Reinert would be the road forem[a]n to qualify her." *Id.*

On July 12 and July 14, 2015, Reinert rode with Klotzbach-Piper again to evaluate her for certification on her assigned route. *Id.* ¶¶ 61–62. On July 12, Reinert was "agitated . . . for no apparent reason." *Id.* ¶ 61. And after the July 14 ride, Reinert told Klotzbach-Piper that she would need another few trips before receiving her certification. *Id.* ¶ 62. Klotzbach-Piper discussed the two rides with her union representative, who told her he would talk to Reinert. *Id.* ¶ 63. On July 23, 2015, Klotzbach-Piper attended a meeting with Reinert and Nunziato, where she received a letter letting her know that she had failed her qualification trip on July 12, 2015, that she had exceeded the number of qualifying attempts to be certified on her route, and that she would be given 30 days to qualify, without pay. *Id.* ¶¶ 67–68. Nunziato told her at the meeting that he and Reinert would be willing and able to assist her in getting qualified, as well as to "rein[] in some of the 'nonsense' that the crews had been inflicting upon her." *Id.* ¶ 71. However, Klotzbach-Piper was also told that "these types of incidents were to be expected and in no way should have 'affected' her the way she felt they had.'" *Id.* Klotzbach-Piper was told to report back on July 25, 2015 to set up a schedule for her qualification. *Id.* After the meeting ended, Reinert walked past Klotzbach-Piper and told her "[y]ou should have just kept your mouth shut." *Id.* ¶ 72. Klotzbach-Piper talked again with the general chairman of her union, who told her the issue "would be straightened out." *Id.* ¶ 73.

Over the next month and a half, Klotzbach-Piper was unable to find a manager able to assist her in setting a schedule. *Id.* ¶ 74. She was told Reinert and Nunziato were unavailable to

ride with her. *Id.* As a result, she worked without pay or reimbursement for hotels for several weeks while the union and Amtrak worked on resolving the issue. *Id.* ¶ 75. On August 26, 2015, Klotzbach-Piper rode with Nunziato for an evaluation. *Id.* ¶ 78. Nunziato told her that "the union did not run the base, he did," *id.*, and to "enjoy departing Jacksonville On-time because it would be her last," *id.* ¶ 79. During the ride, Klotzbach-Piper alleges that Nunziato used a pretext to "take her out of the seat and to allow Ahmed to operate the rest of the trip" after she allegedly made a mistake in a speed-restricted zone. *Id.* ¶ 80. After the ride, Nunziato told Klotzbach-Piper he would "contact her when he figured out what he wanted to do with her." *Id.* ¶ 81.

On August 28, 2015, Klotzbach-Piper was diagnosed with PTSD and anxiety and took a medical leave of absence from Amtrak pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* *Id.* ¶ 83–84. In September 2015, she received a letter stating that she had not worked for pay enough in August and thus that her medical insurance benefits would be terminated. *Id.* ¶ 84. After Klotzbach-Piper talked to the superintendent for her region, he told her that her medical insurance would be reinstated and that she was not removed from service. *Id.* ¶ 85. In November 2015, Klotzbach-Piper sent Nunziato paperwork to forward to Amtrak, seeking to extend her medical leave. *Id.* ¶ 86. The paperwork was never received. *Id.*

On December 3, 2015, Klotzbach-Piper was given clearance to return to work and was advised to report back on December 10, 2015. *Id.* ¶ 87. On December 10, 2015, Nunziato e-mailed her that "he was evaluating her situation and would notify her when it was complete." *Id.* ¶ 88. Klotzbach-Piper filed a complaint regarding her treatment with the Amtrak president on December 17, 2015, *id.* ¶ 89, following which she received a letter from Amtrak's Equal

Employment Opportunity Compliance Office on January 11, 2016 indicating that the office was investigating the complaint, *id.* ¶ 90. Just two days later on January 13, 2016, Klotzbach-Piper received a letter from Amtrak letting her know that she "had not demonstrated the necessary skills to retain certification as an engineer with Amtrak." *Id.* ¶ 91. Klotzbach-Piper was not terminated, *id.*, but between receiving the letter and filing suit in July 2018 she "applied for dozens of other jobs with Amtrak, including positions that she previously held," and was rejected from all of them, *id.* ¶ 96.

## B. Procedural History

On June 8, 2016, Klotzbach-Piper filled out an intake questionnaire with the EEOC. EEOC Intake Questionnaire 5, ECF No. 10-1. On the questionnaire, she alleged that she had been the victim of gender discrimination, age discrimination, and retaliation. *Id.* at 2. Klotzbach-Piper indicated that she did not have a disability and that she was not claiming discrimination on the basis of disability. *Id.* at 2, 3. However, she filled out the portion of the questionnaire specifically directed at claims for discrimination on the basis of disability. *Id.* at 4. Klotzbach-Piper indicated that she had "[n]o disability but [Amtrak] treats me as if I am disabled." *Id.* She noted that she had taken time off work after developing an anxiety disorder, for which she was still taking the medication Fluoxitine, and that she was discriminated against as a result when she returned. *Id.* And she specifically indicated that she had asked Nunziato for an accommodation because of her disability, which he had refused.[2] *Id.* On the last page of the

---

[2] The Court notes that the alleged denial of accommodation is indicated to have occurred in January 2015, just a few months after Klotzbach-Piper began working in Jacksonville. EEOC Intake Questionnaire 4. Given the timeline described in the Complaint, it is possible that the EEOC intake questionnaire incorrectly listed the date of the requested accommodation as January 2015 instead of January 2016.

intake questionnaire, Klotzbach-Piper indicated that she wanted to file a charge of discrimination. *Id.* at 5.

On September 12, 2016, Klotzbach-Piper filed a formal charge of discrimination. EEOC Charge 1, Defs' Reply Ex. A, ECF No. 8-1. Klotzbach-Piper checked the boxes for discrimination on the basis of sex, age, and retaliation on the EEOC charge form. *Id.* She also checked the box indicating that the discrimination was a continuing action. *Id.* In support for the charge, Klotzbach-Piper stated that she was subjected to both verbal and physical harassment, and that she was disciplined and denied her certification in retaliation for complaining about the harassment, on the basis of her age and gender. *See id.*

The EEOC issued Klotzbach-Piper a right to sue letter on April 24, 2018. Compl. ¶ 4. On July 20, 2018, she filed the instant case against Amtrak. *See generally id.* Klotzbach-Piper brings ten claims in her complaint, for violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000 *et seq.* ("Title VII"), of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and of the FMLA. Klotzbach-Piper brings claims for hostile work environment on the basis of her sex and age (Counts I and II), gender and age discrimination (Counts III and IV), retaliation for reporting sex and age-based discrimination prior to June 2016 (Counts V and VII), retaliation for reporting sex and age-based discrimination after she contacted the EEOC in June 2016 (Counts VI and VIII), discrimination on the basis of disability (Count IX), and retaliation for taking medical leave under the FMLA (Count X). *See* Compl. ¶¶ 97–152.

Amtrak filed its motion to dismiss on August 21, 2018. Def's Mot. Dismiss, ECF No. 4. In the motion, Amtrak only seeks to dismiss five of the ten counts in the complaint. *See generally id.* Amtrak argues that Counts I and II are time-barred, that Klotzbach-Piper failed to

exhaust her administrative remedies as to any retaliation covered by Counts VI and VIII and occurring after August 2016, and that Count IX should be dismissed both as time-barred and for failure to exhaust administrative remedies. *See id.* 4–8. Klotzbach-Piper filed her opposition on August 31, 2018. Pl's Opp'n, ECF No. 6. Amtrak filed its reply on September 11, 2018. Def's Reply, ECF No. 8.

### III. LEGAL STANDARD

To prevail on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff need only provide a "short and plain statement of [her] claim showing that [she is] entitled to relief," Fed. R. Civ. P. 8(a)(2), that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). In considering such a motion, the "complaint is construed liberally in the plaintiff['s] favor, and [the Court] grant[s] plaintiff[] the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted). "Threadbare recitals of the elements of

a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of the legal conclusions that are couched as factual allegations. *See Twombly*, 550 U.S. at 555.

In reviewing a motion to dismiss under rule 12(b)(6), a court can only consider "the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." *Latson v. Holder*, 82 F. Supp. 3d 377, 386 (D.D.C. 2015) (quoting *Abhe & Svoboda, Inc., v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007)). Because administrative complaints "are 'public document[s] of which a court may take judicial notice,'" courts accordingly "may consider an EEOC complaint and Notice of Charge without converting a motion to dismiss into a motion for summary judgment." *Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 272 (D.D.C. 2011) (alteration in original) (quoting *Ahuja v. Detica Inc.*, 742 F. Supp. 2d 96, 101–02 (D.D.C. 2010)).

## IV. ANALYSIS

Amtrak moves to dismiss five of the ten claims in the Complaint. As to Counts I and II, the claims for hostile work environment on the basis of sex and age, Amtrak argues that none of the alleged harassment occurred within 300 days prior to Klotzbach-Piper filing a charge with the EEOC, and thus that the claims are time-barred. Defs.' Mem. Supp. Mot. Dismiss 4, ECF No. 4-1. With respect to Counts VI and VIII, Klotzbach-Piper's claims for retaliation occurring after June 2016, Amtrak argues that Klotzbach-Piper failed to exhaust her administrative remedies as to any retaliation occurring later than August 2016, because such retaliation would be outside the scope of her EEOC charge. *Id.* at 6–7. And finally, Amtrak moves to dismiss Count IX, the disability discrimination claim, because it contends that Klotzbach-Piper both

failed to timely file an EEOC charge and failed to exhaust her administrative remedies. *Id.* at 7. The Court addresses each argument in turn. Because it finds that the hostile work environment claims are not time-barred, the Court denies the motion to dismiss Counts I and II. On the other hand, the Court grants the motion as to Counts VI and VIII insofar as they reach retaliatory acts occurring after August 2016, because it finds that Klotzbach-Piper did not exhaust her administrative remedies as to any such retaliation. And finally, the Court denies the motion to dismiss as to Count IX because it finds that Klotzbach-Piper properly exhausted her administrative remedies and timely brought her disability claim.[3]

## A. The Hostile Work Environment Claims Are Not Time-Barred

First, Amtrak contends that both of Klotzbach-Piper's hostile work environment claims are time-barred because none of the alleged harassment occurred within the 300 days before she filed her EEOC charge on September 12, 2016. *Id.* at 4. In her opposition, Klotzbach-Piper asserts that the proper measure of time is 300 days prior to her submission of the EEOC intake questionnaire on June 10, 2016, that several of the alleged acts occurred within that period, and that the Court can "consider the entire time period of the hostile work environment as long as one act contributing to the claim occurs within the . . . period." Pl.'s Mem. Opp'n 3, ECF No.

---

[3] In reviewing the timeliness and exhaustion of Klotzbach-Piper's ADEA, Title VII, and ADA claims, the Court relies in significant part on *Fed. Express Corp. v. Holowecki*, 552 U.S. 389 (2008). *Holowecki* involved an ADEA claim, and the Supreme Court emphasized in resolving the case that "ADEA claims differ in some respects from those pertaining to other statutes the EEOC enforces, such as Title VII . . . and the Americans with Disabilities Act . . . ." *Id.* at 393. The Court further noted that "employees and their counsel must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination[,] . . . even if the EEOC forms and the same definition of charge apply in more than one type of discrimination case." *Id.* (citation omitted). Since *Holowecki* was decided however, courts have routinely applied the case in the Title VII and ADA context. *See, e.g.*, *Minter v. District of Columbia*, 62 F. Supp. 3d 149, 162 (D.D.C. 2014) (applying *Holowecki* to ADA claims); *Hodge v. United Airlines*, 666 F. Supp. 2d 14, 21 (D.D.C. 2009) (applying *Holowecki* to Title VII claims).

6-1.[4]  The Court agrees.

The Court first determines whether the June 10, 2016 EEOC questionnaire constituted a charge for statute of limitations purposes.  "Before filing a lawsuit under the ADA, Title VII, or ADEA, a plaintiff must exhaust her administrative remedies by filing a charge of discrimination with the EEOC . . . ."  *Cooper v. Henderson*, 174 F. Supp. 3d 193, 202 (D.D.C. 2016).  When the plaintiff "has first instituted proceedings with a state or local agency," as Klotzbach-Piper did here, the limitations period for filing such a charge is 300 days from the alleged unlawful employment practice.  *Id.* (citing *Ashraf-Hassan v. Embassy of France*, 878 F. Supp. 2d 164, 170 (D.D.C. 2012)).  "Courts have recognized that the filing of an intake questionnaire with the EEOC can qualify as a 'charge'" for timeliness purposes.  *Norris v. WMATA*, 342 F. Supp. 3d 97, 110 (D.D.C. 2018).  However, a lawsuit following an EEOC charge is "limited in scope to claims that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'"  *Id.* at 111 (quoting *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995)).  At a minimum, the claims must "arise from 'the administrative investigation that can [be] reasonably expected to follow the charge of discrimination.'"  *Park*, 71 F.3d at 907 (quoting *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981)).  And an EEOC questionnaire can only be deemed a charge if it can be "reasonably construed as a request for the agency to take remedial action." *Holowecki*, 552 U.S. at 402.

In her EEOC questionnaire, Klotzbach-Piper represented that she had been discriminated against on the basis of, *inter alia*, sex and age.  EEOC Intake Questionnaire 3.  She also gave the

---

[4] In her opposition, Klotzbach-Piper refers to the date of filing of the EEOC questionnaire as the date of filing of the EEOC charge.  *See generally* Pl.'s Mem. Opp'n.  In response to an order of this Court, *see* Order (Feb. 22, 2019), ECF No. 9, Klotzbach-Piper clarified that the EEOC questionnaire was the document referred to in her opposition.  Response to Order of Court 1, ECF No. 10.

name of another employee who could talk about "the way [she] was treated by other males [and] engineers," and of her local union representative, who could "confirm how [she] was treated and provide documentation of his attempts to stop [the discrimination]." *Id.* at 5. And she indicated that she wanted to file a charge of discrimination. *Id.* The Court finds that this information is sufficient for the EEOC questionnaire to be considered a charge for timeliness purposes and for the 300-day limitations period to run from June 10, 2016. As an initial matter, in its reply Amtrak does not dispute Klotzbach-Piper's assertion that June 10, 2016 is the relevant date from which to measure the limitations period. *See* Def's Reply 2. Next, while the questionnaire does not specifically reference hostile work environment, "a plaintiff need not use any magic words in a charge." *Whorton v. Wash. Metro. Area Transit Auth.*, 924 F. Supp. 2d 334, 348 (D.D.C. 2013). Here, the questionnaire pointed to ongoing discrimination on the basis of sex and age, which the EEOC would be expected to investigate, particularly when the formal charge filed a few months later confirmed that the discrimination was continuing. This could accordingly be expected to result not just in single-event discrimination claims but also in hostile work environment claims. And finally, by indicating that she wanted to file a charge of discrimination, Klotzbach-Piper made the required "request for the agency to take remedial action." *Holowecki*, 552 U.S. at 402.

Having determined the proper limitations period, the Court next reviews whether Klotzbach-Piper's hostile work environment claims are untimely. Because hostile work environment involves "a series of separate acts that collectively constitute one 'unlawful employment practice,'" *Whorton*, 924 F. Supp. 2d at 351 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116–17 (2002)), the Supreme Court has found that a hostile work environment claim can be timely even when some of the component acts fall outside of the

statutory time period, *id.* at 351–52 (citing *Morgan*, 536 U.S. at 116–17).  The relevant inquiry is whether the acts are "'adequately linked into a coherent hostile work environment claim' by 'involv[ing] the same type of employment actions, occur[ing] relatively frequently, and [being] perpetrated by the same managers.'"  *Id.* at 350 (alteration in original) (quoting *Baird v. Gotbaum*, 662 F.3d 1246, 1251 (D.C. Cir. 2011)).

In her opposition, Klotzbach-Piper contends that "several acts contributing to her claims of a hostile work environment . . . occurred after August 15, 2015," or 300 days prior to June 10, 2016.  Pl.'s Mem. Opp'n 3.  She points in particular to the "ride with her superiors that left [her] devastated and in need of medical treatment."  *Id.*  In response, Amtrak asserts that the continuing violation doctrine elaborated on in *Morgan* should not apply because "the Court in *Morgan* carved out certain equitable defenses when a 'plaintiff unreasonably delays filing a charge,'" such as here when Klotzbach-Piper "has no justifiable explanation for her more than three-year delay in pursuing the purported hostile work environment claim."  Defs.' Reply 2 (quoting *Morgan*, 536 U.S. at 121–22).  The Court finds this argument entirely unconvincing. Klotzbach-Piper alleges that the gender and age-based discrimination occurred between late 2014 and at least late 2015.  *See generally* Compl.  She filed an EEOC questionnaire and charge less than a year later, respectively in June 2016 and September 2016.  *See* EEOC Intake Questionnaire; EEOC Charge.  And the EEOC necessarily had to take time to investigate her claims, which is why she did not receive a right to sue letter until April 2018.  *See* Compl. ¶ 4. Klotzbach-Piper filed suit less than three months later.  *See id.*  The three-year delay pointed to by Amtrak is the result of the administrative process Klotzbach-Piper had to follow in order to exhaust her administrative remedies.  Because Amtrak does not meet its burden to show that

Klotzbach-Piper's hostile work environment claims are time-barred, the Court denies the motion to dismiss as to Counts I and II.[5]

### B. Claims of Retaliation After August 1, 2016 Are Not Properly Exhausted

Next, the Court reviews whether Klotzbach-Piper properly exhausted her administrative remedies as to Counts VI and VIII, the claims for gender-based and age-based retaliation after Klotzbach-Piper first complained of discrimination to the EEOC in June 2016. Amtrak contends that Klotzbach-Piper failed to exhaust her administrative remedies as to any retaliation occurring after August 1, 2016, because her EEOC charge indicated that the last date discrimination took place was on August 1, 2016. Def.'s Mem. Supp. 6. Klotzbach-Piper retorts that the two retaliation claims were properly exhausted because the EEOC charge indicated that she was the subject of continuing discrimination and any future retaliation would necessarily have grown out of her initial allegations. Pl.'s Mem. Opp'n 4. On the facts of this case, the Court is not persuaded. The Court accordingly grants Amtrak's motion to dismiss as to retaliation occurring after August 1, 2016.

---

[5] The Court is not entirely convinced that the acts of gender and age-based discrimination Klotzbach-Piper alleges are "adequately linked into a coherent hostile work environment claim." *Whorton*, 924 F. Supp. 2d at 351 (quoting *Baird*, 662 F.3d at 1251). Most of the alleged discriminatory acts occurred between September 2014 and April 2015 and were undertaken by Klotzbach-Piper's co-workers rather than by her supervisors. *See* Compl. ¶¶ 30–50. Klotzbach-Piper does allege that Ahmed tolerated her treatment by others and discriminated against her on the basis of gender, Compl. ¶ 46, as well as took part in the August 26, 2015 ride, Compl. ¶ 80. It might also be inferred from the Complaint that Nunziato, who was also aware of the harassment and refused to act on it, *e.g.* Compl. ¶ 71, discriminated against Klotzbach-Piper on the basis of gender or age in denying her the opportunity to qualify and potentially sabotaging her qualification on August 26, 2015. But it is unclear to the Court that the alleged wrongful acts at the July 23, 2015 meeting, August 25, 2016 qualification, and following Klotzbach-Piper's medical leave were motivated by gender or age-based discrimination rather than in retaliation for Klotzbach-Piper's reporting of Reinert (which may not be covered by the anti-discrimination statutes). Because Amtrak does not present any argument on the issue, the Court does not consider it.

As discussed above in Part IV.A., a lawsuit following an EEOC charge extends to "claims that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Park*, 71 F.3d at 907 (quoting *Chisholm*, 665 F.2d at 491). Under that standard, claims must "arise from 'the administrative investigation that can [be] reasonably expected to follow the charge of discrimination,'" *id.* at 111 (quoting *Park*, 71 F.3d at 907), and whether a claim is properly exhausted thus depends on whether the "investigation resulting from the[] [charge] . . . . would reasonably encompass" the claim, *Whorton*, 924 F. Supp. 2d at 349. Prior to *Morgan*, courts in this circuit applied the standard broadly, and, under the continuing violation doctrine, "permitted a plaintiff to bring suit and recover for all related incidents, even those that were not specifically exhausted" in an EEOC charge. *Mount v. Johnson*, 36 F. Supp. 3d 74, 83 (D.D.C. 2014) (citing *Morgan*, 536 U.S. at 114–15). As a result, courts "generally held that a plaintiff was not required to separately exhaust her administrative remedies for retaliation claims arising after the filing of an administrative complaint." *Smith-Thompson v. District of Columbia*, 657 F. Supp. 2d 123, 136 (D.D.C. 2009).

In *Morgan*, the Supreme Court addressed the timeliness of Title VII retaliation, discrimination, and hostile work environment claims premised on acts that had occurred years before the plaintiff had filed an EEOC charge. *See Morgan*, 536 U.S. at 105–06. While holding, as discussed above in Part IV.A., that hostile work environment claims were timely as long as any act alleged to be part of the hostile work environment was timely, *id.* at 118, the Court rejected the application of the continuing violation doctrine to discrete acts of discrimination or retaliation, *id.* at 113. The Court "made clear that claims based on discriminatory or retaliatory acts that occurred more than 180 or 300 days before the filing of [an] administrative charge are time-barred, regardless of whether they are 'like or reasonably related to' allegations contained

in the administrative charge." *Smith-Thompson*, 657 F. Supp. 2d at 136 (quoting *Morgan*, 536 U.S. at 113). As a general rule following *Morgan*, a plaintiff bringing claims for discrete acts of discrimination or retaliation "must file an EEOC charge for each discrete act within the appropriate time limit." *Poole v. U.S. Gov't Publ'g Office*, 258 F. Supp. 3d 193, 200 (D.D.C. 2017) (citing *Morgan*, 536 U.S. at 113).

While *Morgan* "dealt with timeliness rather than exhaustion," *id.*, and involved claims stemming from acts that had occurred *before* the filing of an administrative complaint, courts have struggled with how the decision affects exhaustion requirements for claims stemming from acts that occur *after* the filing of an administrative complaint. The majority of courts to have addressed the issue in this district "have interpreted *Morgan* to require exhaustion for all discrete acts of retaliation after an administrative charge is filed, 'regardless of any relationship that exists between those discrete claims and any others.'" *Hicklin v. McDonald*, 110 F. Supp. 3d 16, 19 (D.D.C. 2015) (quoting *Rashad v. Wash. Metro. Area Transit Auth.*, 945 F. Supp. 2d 152, 165–66 (D.D.C. 2013)). But a minority has "continued to recognize an exception to the administrative-exhaustion requirement where unexhausted discrimination and retaliation claims satisfy the 'like or reasonably related' test." *Poole*, 258 F. Supp. 3d at 201 (quoting *Hicklin*, 110 F. Supp. 3d at 19 (citing cases)). And while the D.C. Circuit has "declined to take a position on the issue," most other circuits to have addressed it have also maintained a "like or reasonably related" exception to the administrative exhaustion requirement for discrete acts occurring after an administrative charge is filed. *Id.* (citing cases); *see also Mount*, 36 F. Supp. 3d at 86 (citing cases).

The Court need not definitely pronounce itself one way or the other here, because Klotzbach-Piper failed to exhaust her administrative remedies on any claim based on retaliation

occurring after August 1, 2016 even under the narrower interpretation of *Morgan*. In response to Amtrak's argument that she failed to file a new EEOC charge for retaliation occurring after August 1, 2016, Def.'s Mem. Supp. 7, Klotzbach-Piper argues that any such claims are "like or reasonably related to the allegations of the charge," Pl.'s Mem. Opp'n 4 (citing *Park*, 71 F.3d at 907). But the sole support Klotzbach-Piper provides for that argument is that the complaint alleges "she was denied other positions with Amtrak that she was previously qualified [for] and had indeed held with Amtrak." *Id.* Allegations in the *complaint* are not indicative of whether claims can be expected to arise from the investigation following an administrative charge. And the EEOC charge Klotzbach-Piper filed is very light on details. Klotzbach-Piper did check the box for "continuing action" on the EEOC charge form. EEOC Charge 1. But the charge identified both sex, age, and retaliation as the sources of discrimination, and Klotzbach-Piper's description of the discrimination did not indicate what discrimination was ongoing. *See id.* While generally alleging that she had been "discriminated against due to [her] age, and gender," Klotzbach-Piper specifically identified one instance of retaliation, the discipline and denial of certification after she reported harassment. *Id.* She did not indicate that she had otherwise been subjected to retaliation, or that she had applied for or been denied any position at Amtrak. *Id.*

Given the lack of details regarding retaliation in Klotzbach-Piper's charge, with discipline and denial of her certification being briefly noted as the sole basis for her retaliation claim, the Court cannot find that future denials of other positions at Amtrak were "reasonably related" to the charge. In determining whether a claim "aris[es] from 'the administrative investigation that can reasonably be expected to follow the charge of discrimination,'" *Park*, 71 F.3d at 907 (quoting *Chisholm*, 665 F.2d at 491), courts evaluate "whether the allegations that were specifically put before the agency and the new allegations . . . are factually similar such that

they would be discovered during the agency's investigation," *Mount*, 36 F. Supp. 3d at 85–85. Here, the only allegations of retaliation in the charge involved discipline and denial of certification. These allegations are not factually similar to allegations that Klotzbach-Piper was retaliatorily denied other positions at Amtrak. *Cf. Thomas v. Vilsack*, 718 F. Supp. 2d 106, 121–22 (D.D.C. 2010) (finding that allegations of discriminatory denial of promotions were not within scope of investigation that reasonably would have followed allegation of discriminatory failure to promote). Because any retaliatory denial of positions at Amtrak would not be reasonably related to the allegations in her EEOC charge, and because Klotzbach-Piper failed to file a subsequent EEOC charge as to any such discrete retaliatory act, Klotzbach-Piper failed to exhaust her administrative remedies as to any retaliation claim after August 1, 2016. The Court therefore grants the motion to dismiss Counts VI and VIII, to the extent they reach conduct occurring after August 1, 2016.

### C. The Disability Claim is Timely and Reasonably Related to the EEOC Questionnaire

Finally, the Court reviews Amtrak's motion to dismiss Klotzbach-Piper's ADA claim as untimely and improperly exhausted. Amtrak contends that Klotzbach-Piper failed to exhaust her administrative remedies because her EEOC charge does not mention disability and the EEOC questionnaire cannot be taken into consideration in determining exhaustion of administrative remedies. *See* Def.'s Mem. Supp. 5–6; Def.'s Reply 2–4. Amtrak also argues that the claim is time-barred. Def.'s Mem. Supp. 5. The Court first reviews whether Klotzbach-Piper properly exhausted her administrative remedies before briefly addressing Amtrak's timeliness argument. Because the Court finds that the EEOC intake questionnaire can be taken into consideration, and that the questionnaire reasonably points to a timely disability discrimination claim, the Court denies the motion as to Count IX.

First, the Court addresses the thornier issue of whether Klotzbach-Piper exhausted her administrative remedies as to the ADA claim.  In its motion, Amtrak argues that the claim was not properly exhausted because the EEOC charge does not mention disability.  Def.'s Mem. Supp. 7–9.  In opposition, Klotzbach-Piper points out that the EEOC questionnaire referenced discrimination on the basis of disability.  Pl.'s Opp'n 5–6.  And in reply, Amtrak appears to make two arguments for why the EEOC questionnaire should not be considered in determining whether Klotzbach-Piper exhausted her administrative remedies: first, Amtrak appears to argue that an EEOC questionnaire can never be relied on for exhaustion purposes, and second, it argues that the EEOC questionnaire cannot be used to expand the scope of litigation to claims absent from the formal charge.  Def.'s Reply 2–4.  While the Court recognizes that there is a divergence of opinions amongst courts on the issue, it does not find Amtrak's arguments persuasive.

 As an initial matter, Supreme Court precedent suggests that plaintiffs may be able to rely on an EEOC questionnaire to exhaust their administrative remedies when no EEOC charge is subsequently filed.  While not squarely addressing the issue, the Court's holding in *Holowecki* that an EEOC questionnaire could qualify as a charge for timeliness purposes opened the door for courts to find that EEOC questionnaires qualify as charges for exhaustion purposes more generally.  In *Holowecki*, the plaintiff had filed an EEOC questionnaire alleging discrimination on the basis of age but had not submitted a formal charge of discrimination with the EEOC prior to filing suit under the ADEA.  *Holowecki*, 552 U.S. at 394.  The Court upheld the EEOC's determination that a questionnaire that constituted a request for the agency to act was a charge, and rejected the argument that the plaintiff's claim was untimely.  *Id.* at 405–07.  At least one court in this circuit has interpreted *Holowecki* to apply not just to a charge's timeliness, but to exhaustion more generally, and found a plaintiff who had filed an EEOC questionnaire but had

not filed a formal EEOC charge to have exhausted his administrative remedies. *See Leftwich v. Gallaudet Univ.*, 878 F. Supp. 2d 81, 91 (D.D.C. 2012) (finding that plaintiff had exhausted administrative remedies solely by filing EEOC intake questionnaire); *see also Green v. JP Morgan Chase Bank Nat'l Ass'n*, 501 F. App'x 727, 731 (10th Cir. 2012) (suggesting that *Holowecki* stands for the proposition that EEOC intake questionnaire alone can qualify as a formal charge for exhaustion purposes, but finding that questionnaire could not exhaust claims not raised in subsequent EEOC charge); *Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1183–86 (10th Cir. 2007) (finding, before *Holowecki* was decided, that plaintiff had properly exhausted administrative remedies by filing EEOC intake questionnaire).

The more complicated question is whether an EEOC intake questionnaire can constitute a charge for exhaustion purposes when the plaintiff later filed a formal EEOC charge that did not include some of the claims made in the questionnaire. As Amtrak points out, a number of courts, including the Third, Fourth, and Tenth Circuits, have found a subsequently filed EEOC charge to supersede the allegations made in a prior EEOC intake questionnaire. *See* Def.'s Reply 3–4 (citing cases); *Balas v. Huntington Ingalls Indus.*, 711 F.3d 401, 407–08 (4th Cir. 2013) (finding, in Title VII discrimination case, that considering intake questionnaire as part of formal discrimination charge would "contravene[e] the purposes of Title VII"); *Green*, 501 F. App'x at 731 (finding that plaintiff had failed to exhaust administrative remedies when claim asserted in EEOC intake questionnaire was omitted in formal charge); *Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 415 (3d Cir. 2010) (same). However, there appears to be a circuit split on the issue, with the Sixth Circuit and courts in several other circuits finding the opposite. *See Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502, 508–10 (6th Cir. 2011) (setting standard for what constitutes a charge after *Holowecki* and noting that EEOC "Charge Information Form" and

20

EEOC "Charge of Discrimination" separately qualified as charges that exhausted administrative remedies); *see also Patterson v. Xerox Corp*, 732 F. Supp. 2d 181, 190 (W.D.N.Y. 2010) (denying motion to dismiss discrimination claims when EEOC charge only referenced retaliation but EEOC questionnaire referenced gender and race discrimination); *Stone v. Acad., Ltd.*, 156 F. Supp. 3d 840, 843–45 (S.D. Tex. 2016) (finding that EEOC questionnaire constituted a charge for purposes of exhaustion even when subsequent EEOC charge omitting some information was filed, in reliance on *Holowecki*).  While the D.C. Circuit has not spoken on the issue, at least one court in this circuit has found that claims referenced in an EEOC questionnaire but not in a subsequently filed EEOC charge were not properly exhausted.  *See Ahuja v. Detica Inc.*, 873 F. Supp. 2d 221, 228–30 (D.D.C. 2012) (distinguishing *Holowecki* as solely addressing what constitutes a charge for timeliness purposes and finding that EEOC intake questionnaire could not be used to "expand the substantive scope" of a plaintiff's case beyond what was alleged in EEOC charge).

The Court concludes that, under the D.C. Circuit's ruling in *Park* and with the further guidance provided by *Holowecki*, allegations giving rise to a claim and brought in an EEOC intake questionnaire but not in a subsequent EEOC charge can still be considered when evaluating exhaustion of administrative remedies.  As noted above, the D.C. Circuit explained in the Title VII context in *Park* that what matters for exhaustion purposes is whether the claims brought are "like or reasonably related to the allegations of the charge and growing out of such allegations."  *Park*, 71 F.3d at 907 (citing *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)).  "At a minimum," the claims "must arise from 'the administrative investigation that can reasonably be expected to follow the charge.'"  *Id.* (quoting *Chisholm*, 665 F.2d at 491).  The D.C. Circuit noted in *Park* that the administrative charge requirement "should

not be construed to place a heavy technical burden on 'individuals untrained in negotiating procedural labyrinths.'" *Id.* (quoting *Loe v. Heckler*, 768 F.2d 409, 417 (D.C. Cir. 1985)).

Despite this low burden, the D.C. Circuit in *Park* found that a D.C. Department of Human Rights "Pre-Complaint Questionnaire" did not constitute a charge, even when the questionnaire could be construed as making out a hostile work environment claim, because it provided no guarantee that the information provided would result in a formal EEOC complaint being initiated, it was unsworn, and more importantly there was no evidence that either the employer or the EEOC had access to the questionnaire. *Id.* at 908–09. The D.C. Circuit emphasized that "[t]o treat Intake Questionnaires willy-nilly as charges would be to dispense with the requirement of notification of the prospective defendant, since that is a requirement only of the charge and not of the questionnaire." *Id.* at 909 (quoting *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 80 (7th Cir. 1992)).

As an initial matter, it is unclear that the notice requirement is necessary for a document to constitute a charge after *Holowecki*. The Supreme Court in *Holowecki* appears to have implicitly rejected that rationale when it acknowledged that the employer in the case had not been aware of the plaintiff's allegations until a suit had been filed, but nonetheless rejected the argument that the EEOC questionnaire could not qualify as a charge because the employer had never been notified. *Holowecki*, 552 U.S. at 403–04. The Supreme Court also noted that the "permissive standard" it was constructing might lead to a wide range of documents being considered charges, but that the result was consistent with the purpose of the ADEA, which "set[] up a 'remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process.'" *Id.* at 402 (quoting *EEOC v. Commercial Office Products Co.*, 486 U.S. 107, 124 (1988)).

In any event, the EEOC intake questionnaire at issue in this case is very different from the questionnaire at issue in *Park*, and the Court finds that *Park* does not compel the rejection of claims stemming from allegations brought in the questionnaire but not in the subsequent charge. *Contra Ahuja*, 873 F. Supp. 2d at 229–30. The EEOC intake questionnaire at issue here was provided to the EEOC and clearly indicated that Klotzbach-Piper "want[ed] to file a charge of discrimination, and . . . authorize[d] the EEOC to look into the discrimination [she] described . . . ." EEOC Intake Questionnaire 5. And the questionnaire also indicated that, by checking the box indicating that she wanted to file a charge of discrimination, Klotzbach-Piper "underst[ood] that the EEOC must give the employer . . . that [she] accuse[d] of discrimination information about the charge." *Id.* Unlike the questionnaire at issue in *Park*, the questionnaire here thus gave every indication that notice would be provided to the employer. Notice of the allegations in the questionnaire may have ultimately not been provided because the EEOC may have only forwarded the charge to Amtrak, but this does not affect whether the questionnaire could qualify as a charge when it was filed. *See Holowecki*, 552 U.S. at 404 ("It would be illogical and impractical to make the definition of a charge dependent upon a condition subsequent over which the parties have no control.").

With the EEOC questionnaire explicitly requesting the agency to act on Klotzbach-Piper's claims, the only remaining issue is whether the ADA claim could reasonably be expected to ensue from the EEOC's investigation. While Klotzbach-Piper indicated that she did not have a disability, EEOC Intake Questionnaire 2, and did not check the box for discrimination on the basis of disability, *id.* at 3, she filled out the portion of the questionnaire specifically addressing discrimination on the basis of disability, *id.* at 4. Klotzbach-Piper indicated that she did not have a disability but that Amtrak treated her as though she had one, noted that she had developed an

23

anxiety disorder for which she had been prescribed medication, and alleged that her illness was held against her and Amtrak had denied her a work accommodation. *Id.*

The Court finds these allegations sufficient for the EEOC to investigate potential discrimination on the basis of disability, and for Klotzbach-Piper's ADA claims to "arise from 'the administrative investigation that c[ould] reasonably be expected to follow the charge.'" *Park*, 71 F.3d at 907 (quoting *Chisholm*, 665 F.2d at 491). To be sure, Klotzbach-Piper's allegations in the EEOC intake questionnaire were somewhat confusing, at the same time indicating that she was not bringing a disability claim and that she was discriminated against because her employer treated her as though she was disabled (a situation that can give rise to a "regarded as" claim under the ADA, *see* 42 U.S.C. § 12102(1)(C)). But there is no indication that Klotzbach-Piper was represented by a lawyer at the time she filled out the questionnaire or filed the charge, and her confusion regarding what claims she could bring could be expected in a "remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process." *Commercial Office Products Co.*, 486 U.S. at 124. Because of this evident confusion, the Court cannot conclude that Klotzbach-Piper's omission of the disability claim in the subsequently submitted charge was a knowing abandonment of that disability claim. A more knowledgeable EEO investigator looking at both the questionnaire and the charge would have reasonably inquired about Klotzbach-Piper's allegations of a potential 'regarded as' accommodation claim, and, after ascertaining her intent, would have investigated those allegations as such. The Court therefore finds that Klotzbach-Piper properly exhausted her administrative remedies as to the ADA claim.

Next, the Court briefly addresses the ADA claim's timeliness. Amtrak asserts that the claim is time-barred. Def.'s Mem. Supp. 7. The Court disagrees. The complaint makes clear

that Klotzbach-Piper's ADA claim is premised on Amtrak's alleged refusal to certify her as an engineer after she was diagnosed with, and treated for, PTSD and anxiety. *See* Compl. ¶¶ 143–47. This alleged discrimination began at the earliest in December 2015, when Klotzbach-Piper returned to work after taking medical leave. *Id.* ¶ 145. And December 2015 is within 300 days of the filing of both Klotzbach-Piper's EEOC questionnaire in June 2016 and EEOC charge in September 2016. The Court thus finds that Klotzbach-Piper's ADA claim is not time-barred and denies the motion to dismiss Count IX.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Counts I, II, and IX is **DENIED**. Defendants' motion to dismiss Counts VI and VIII, to the extent they involve any allegations of retaliation occurring after August 1, 2016, is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: March 15, 2019                    RUDOLPH CONTRERAS
                                         United States District Judge