# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| KAREN KLOTZBACH-PIPER, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 18-1702 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 64, 65 |
| | : | | |
| NATIONAL RAILROAD | : | | |
| PASSENGER CORPORATION, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### DENYING PLAINTIFF'S MOTION TO RECONSIDER; DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT

## I. INTRODUCTION

Plaintiff Karen Klotzbach-Piper ("Klotzbach-Piper" or "Plaintiff") brought the instant action against Defendant National Railroad Passenger Corporation ("Amtrak" or "Defendant"), claiming, among other allegations, that Amtrak subjected her to a discriminatory hostile work environment in violation of both Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967 ("ADEA"). Compl. ¶¶ 97–109, ECF No. 1. In a prior opinion, the Court granted Amtrak's motion *in limine* to preclude Klotzbach-Piper from introducing evidence and making arguments at trial in support of an award of economic damages—back pay, front pay, and pension losses—arising from her non-certification as a locomotive engineer and non-selection for other positions at Amtrak. *See Klotzbach-Piper v. Nat'l R.R. Passenger Corp.* (*Klotzbach-Piper III*), No. 18-cv-1702, 2022 WL 7002841, at *2–4 (D.D.C. Oct. 12, 2022). The Court agreed with Amtrak that Klotzbach-Piper had not only failed to show that she had been terminated or constructively discharged as necessary to support a lost compensation award for her Title VII and ADEA hostile work environment claims, but she had

also not demonstrated that Amtrak's non-certification decision was even relevant to her hostile work environment claims. *See id.* at *3–4.

Recognizing that its decision would "substantially reduce[] the scope of Klotzbach-Piper's claimed recovery," however,  the Court stated that, "[s]hould Klotzbach-Piper wish to move for reconsideration, she must submit a proffer, with citations to evidentiary support, detailing her theory of how *the alleged hostile working environment* caused the non-certification decision, and/or any actual or constructive discharge, and/or how *the alleged hostile working environment* otherwise caused any loss of compensation or benefits (i.e., before any discharge)." *Id.* at *4 (emphasis in original).  The Court further directed that any such supplemental briefing must "cite and discuss apposite legal authority and explain why any lost compensation or benefits allegedly caused by the hostile working environment are recoverable consistent with the legal principles outlined in [the Court's] opinion." *Id.*  Klotzbach-Piper has submitted a motion for reconsideration as well as a motion to amend her Complaint.  For the reasons discussed below, the Court denies both of Klotzbach-Piper's motions.

## II.  BACKGROUND

The Court presumes familiarity with its prior opinions in this matter, which recounted at length the factual background of this case.  *See Klotzbach-Piper v. Nat'l R.R. Passenger Corp.* (*Klotzbach-Piper I*), 373 F. Supp. 3d 174, 178–80 (D.D.C. 2019); *Klotzbach-Piper v. Nat'l R.R. Passenger Corp.* (*Klotzbach-Piper II*), No. 18-cv-1702, 2021 WL 4033071, at *1–4 (D.D.C. Sept. 3, 2021); *Klotzbach-Piper III*, 2022 WL 7002841, at *1.  Nevertheless, the Court recounts certain of the facts and allegations relevant to the motions at issue in this Opinion.

### A.  Factual Background

Klotzbach-Piper worked for Amtrak for almost thirty years.  *Klotzbach-Piper II*, 2021 WL 4033071, at *1.  In 2014, Klotzbach-Piper began Amtrak's training program for recertification as a locomotive engineer in Jacksonville, Florida.  *Klotzbach-Piper I*, 373 F. Supp. 3d at 178.  As part of Klotzbach-Piper's on-the-job training, she observed other engineers and operated a locomotive herself under a training instructor's supervision.  *Klotzbach-Piper II*, 2021 WL 4033071, at *1.  Working with two training instructors at any given time, Klotzbach-Piper would ride with each trainer for one trip a week.  *Id.*  Brian Morrison, whom Klotzbach-Piper described as a "pretty good instructor," served as her first on-the-job training instructor.  *Id*. (citation omitted); Def.'s Statement of Undisputed Material Facts in Supp. of Mot. for Summ. J. ("Def.'s Statement of Undisputed Material Facts") ¶¶ 42–44, ECF No. 29-1.  Beginning in September 2014, her other trainer was Phillip Shaw.  *Klotzbach-Piper II*, 2021 WL 4033071, at *1.  Shaw was then replaced by Sharif Ahmed in February 2015.  *Id.*

Klotzbach-Piper claims that, essentially from the start of her training, other Amtrak employees subjected her to various and repeated acts of discrimination.  *See generally* Compl. In particular, engineers Shaw and Christopher Martone allegedly engaged in sex- and age-based harassment that created a hostile environment, by, among other behavior, "call[ing] her names like 'bitch' and 'grandmother,' kick[ing] her or hit[ting] her with a flagging stick while she was operating the train, and brush[ing] up against her breasts unnecessarily."  *Klotzbach-Piper II*, 2021 WL 4033071, at *2 (citation omitted); *see also id.* at *15–17; Compl. ¶¶ 30–43.  According to Klotzbach-Piper, Shaw and Martone's harassment persisted even though she reported it to her superiors and union representative.  *See* Compl. ¶¶ 32–40, 42–43.  Klotzbach-Piper claims that, as a result of Shaw and Martone's behavior, she developed anxiety and began to suffer daily

anxiety attacks, eventually having to take over three months of medical leave.  *Klotzbach-Piper II*, 2021 WL 4033071, at *3, *16.

During Klotzbach-Piper's training, training instructors regularly reviewed her performance using scored evaluation forms.  *Id.* at *1.  Between September 2014 and June 2015, Morrison "gave Klotzbach-Piper scores that denoted 'little' or 'general familiarity' with the route (scores of around 2 or 3 on a scale of 1 to 5)."  *Id.* at *11; *see also* Exs. 6–11 to Pl.'s Dep. at 82–121, ECF No. 29-4.  As late as June 2015, Morrison wrote that Klotzbach-Piper "still need[ed] to learn breaking p[oin]ts for station and control p[oin]ts" and that she "need[ed] more trips."  Ex. 11 to Pl.'s Dep. at 119–20 (capitalization altered).  Ahmed gave her similar scores in June 2015 and commented that Klotzbach-Piper had "difficulty multi tasking," "remebering [sic] where track speeds start," and "remebering [sic] station locations."  *Id.* at 115 (capitalization altered).

In addition, during Klotzbach-Piper's qualifying period, road foremen Richard Nunziato and Matthew Reinert accompanied her on certain trips to evaluate her performance and filled out scored evaluation forms, but their forms differed from the ones that training instructors used.  *Klotzbach-Piper II*, 2021 WL 4033071, at *2.  From May through August 2015, Klotzbach-Piper took several qualifying rides.  *Id.* at *3.  The scores she received from Nunziato and Reinert ranged from middling to failing.  *Id.*  Reinert observed that she needed to work on remembering interlocking names and mileposts, that she lacked train handling skills and the ability to multitask, that she violated a speed restriction on one ride, and that she missed a station platform on another.  *Id.*  Nunziato supervised her final qualifying ride and gave her a failing score.  *Id.* On that ride alone, Klotzbach-Piper missed a station platform twice and violated a speed restriction, and Nunziato ended up having Ahmed operate the train.  *Id.*

4

Two days after this final qualifying ride, on August 28, 2015, Klotzbach-Piper was diagnosed with post-traumatic stress disorder ("PTSD") and anxiety, Compl. ¶ 83, and she stopped reporting to work, *Klotzbach-Piper II*, 2021 WL 4033071, at *3. Amtrak denied Klotzbach-Piper leave under the Family and Medical Leave Act ("FMLA") but allowed her to take non-FMLA medical leave, and Klotzbach-Piper remained on leave from August 28 through December 7, 2015. *Id.* Amtrak ultimately refused to recertify Klotzbach-Piper as a locomotive engineer, explaining in a letter dated January 13, 2016 that she "[had] not demonstrated the necessary proficiency in the knowledge, skills and abilities required to retain certification as a Train Service Engineer with Amtrak." Ex. 4 to Hines Dep. ("Decision Letter") at 27, ECF No. 29-6. After receiving this letter denying her certification, Klotzbach-Piper applied for dozens of other jobs with Amtrak, but was not hired for any of them. Compl. ¶ 96.

### B.  Procedural Background

Klotzbach-Piper sued Amtrak, alleging that the non-certification decision was the result of sex discrimination in violation of Title VII, age discrimination in violation of the ADEA, and disability discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA"). *Id.* at 19–20, 24. She also brought claims of retaliation for protected activity under Title VII, the ADEA, and the FMLA. *Id.* at 21–25. Finally, she alleged that Amtrak subjected her to a discriminatory hostile work environment in violation of both Title VII and the ADEA. *Id.* at 17–19. The Court dismissed some of these claims for failure to exhaust administrative remedies, and then granted summary judgment in favor of Amtrak on all remaining claims except for the hostile work environment claims. *Klotzbach-Piper II*, 2021 WL 4033071, at *1, *4. As relevant here, the Court held that the evidence could not give rise to a reasonable inference that any sex or age discrimination was a but-for or proximate cause of Amtrak's decision to deny Klotzbach-

Piper recertification as a locomotive engineer.  *Id.* at *12–13.  The summary judgment record showed that, even if some of her evaluators had harbored discriminatory animus, these evaluations were not a but-for cause of the recertification decision because Klotzbach-Piper also "received consistently poor reviews from evaluators whom she [did] not allege harbored sex- or age-related animus."  *Id.* at *12.  Moreover, these "poor reports from unbiased evaluators" "ma[de] any connection between . . . [discriminatory] animus and the noncertification decision too attenuated to constitute proximate cause."  *Id.*

Upon considering the parties' motions *in limine* in advance of the trial on Klotzbach-Piper's claims alleging a hostile work environment under Title VII and the ADEA, the Court also granted Amtrak's motion *in limine* to preclude Klotzbach-Piper from "(1) calling any witnesses to testify; (2) introducing any other evidence; (3) offering any argument; and (4) recovering any economic damages related to her non-certification as a locomotive engineer and non-selection for other positions at Amtrak."  *See Klotzbach-Piper III*, 2022 WL 7002841, at *2–4.  The Court agreed with Amtrak that Klotzbach-Piper had not only failed to show termination or constructive discharge as necessary to support a lost compensation award for her Title VII and ADEA hostile work environment claims, but she had also not demonstrated that the non-certification decision was relevant to her hostile work environment claims.  *See id.* at *3–4.  The Court observed, however,  that contrary to Amtrak's arguments otherwise, the Court's previous summary judgment opinion—which concluded that "the non-certification was caused not by tainted, discriminatory evaluations from Shaw and Martone, or by retaliation against protected activity, but rather by Klotzbach-Piper's failure to meet the performance criteria for recertification"—did not necessarily "foreclose Klotzbach-Piper from arguing that a discriminatory hostile work environment caused the non-certification decision and resulting consequences, perhaps by

interfering with Klotzbach-Piper's work performance such that she could not meet performance standards she otherwise would have satisfied." *Id.* at *4 n.4.  The Court thus stated that, "[s]hould Klotzbach-Piper wish to move for reconsideration, she must submit a proffer, with citations to evidentiary support, detailing her theory of how *the alleged hostile working environment* caused the non-certification decision, and/or any actual or constructive discharge, and/or how *the alleged hostile working environment* otherwise caused any loss of compensation or benefits (i.e., before any discharge)." *Id.* at *4 (emphasis in original).  The Court further directed that she must "cite and discuss apposite legal authority and explain why any lost compensation or benefits allegedly caused by the hostile working environment are recoverable consistent with the legal principles outlined in [the Court's] opinion." *Id.*

Klotzbach-Piper has now filed a motion seeking reconsideration of the Court's grant of Amtrak's motion *in limine* precluding Klotzbach-Piper from introducing evidence related to back pay, front pay, or pension losses at trial, *see* Pl.'s Mot. to Reconsider ("Pl.'s Mot. for Recons."), ECF No. 64, as well as a Proposed Amended Complaint, Pl.'s Mot. to Amend Compl. ("Pl.'s Mot. to Amend") at 6, ECF No. 65.  Amtrak opposes both motions.  Def.'s Opp'n to Pl.'s Mot. for Recons., ECF No. 70; Def.'s Opp'n to Pl.'s Mot. to Amend, ECF No. 69.  Although Klotzbach-Piper has not replied, her motions are ripe for consideration.

### III.  LEGAL STANDARD

### A.  Motion for Reconsideration

A court may reconsider any interlocutory order under Federal Rule of Civil Procedure 54(b) "as justice requires," *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011) (internal quotations omitted), but "[i]n this District, that abstract phrase is interpreted narrowly," *In re Rail Freight Fuel Surcharge Antitrust Litig. (No. II)*, No. 20-mc-

00008, 2021 WL 1909777, at *5 (D.D.C. May 12, 2021) (internal quotations omitted).

Reconsideration may be appropriate "when a court has 'patently misunderstood the parties, made

a decision beyond the adversarial issues presented, made an error in failing to consider

controlling decisions or data, or where a controlling or significant change in the law has

occurred.'" *Ali v. Carnegie Inst. of Wash.*, 309 F.R.D. 77, 80 (D.D.C. 2015) (quoting *U.S. ex rel.*

*Westrick v. Second Chance Body Armor, Inc.*, 893 F. Supp. 2d 258, 268 (D.D.C. 2012)).  "The

burden is on the moving party to show that reconsideration is appropriate and that harm or

injustice would result if reconsideration were denied." *Westrick*, 893 F. Supp. 2d at 268.  "A

court's discretion under Rule 54(b) . . . is 'limited by the law of the case doctrine and subject to

the caveat that where litigants have once battled for the court's decision, they should neither be

required, nor without good reason permitted, to battle for it again.'"  *Mahoney v. U.S. Capitol*

*Police Bd.* (*Mahoney II*), 566 F. Supp. 3d 22, 26 (D.D.C. 2022) (quoting *Singh v. George*

*Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005)).

### B.  Motion to Amend Complaint

Pursuant to the Federal Rules of Civil Procedure, a party may amend its pleading once as

a matter of course within 21 days after serving it, or within a specified amount of time if the

pleading is one to which a responsive pleading is required.  Fed. R. Civ. P. 15(a)(1).  "In all other

cases, a party may amend its pleading only with the opposing party's written consent or the

court's leave."  Fed. R. Civ. P. 15(a)(2).

The decision to grant or deny leave to amend "is committed to a district court's

discretion."  *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam).  Although

leave to amend a complaint "shall be freely given when justice so requires," Fed. R. Civ. P.

15(a)(2), "the Supreme Court has instructed federal courts to consider the following factors: (1)

undue delay; (2) the movant's bad faith or dilatory motive; (3) repeated failures to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party by virtue of permitting an amendment; and (5) futility of the amendment," *Norris v. Salazar*, 746 F. Supp. 2d 1, 3 (D.D.C. 2010) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  An amendment is "futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss." *De Sousa v. Dep't of State*, 840 F. Supp. 2d 92, 113 (D.D.C. 2012) (quoting *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 114 (D.D.C. 2002)); *see also, e.g.*, *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996) ("Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss.").

## IV.  ANALYSIS

### A.  Motion for Reconsideration

As the Court explained in its previous opinion, *see Klotzbach-Piper III*, 2022 WL 7002841, at \*3, a Title VII plaintiff seeking equitable relief in the form of front pay or back pay must show an actual termination or other discriminatory discharge, such as a constructive discharge, *see Brown v. District of Columbia*, 768 F. Supp. 2d 94, 101 (D.D.C. 2011) (Kay, Mag. J.), *aff'd*, 493 F. App'x 110 (D.C. Cir. 2012) (unpublished per curiam judgment); *Hertzberg v. SRAM Corp.*, 261 F.3d 651, 659 (7th Cir. 2001) ("A victim of discrimination that leaves his or her employment as a result of the discrimination must show either an actual or constructive discharge in order to receive the equitable remedy of reinstatement, or back and front pay in lieu of reinstatement."); *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 317 n.6 (3d Cir. 2006) (collecting cases).  Stated differently, such monetary relief in a Title VII hostile work

environment case "is appropriate where the plaintiff establishes 'the discrimination was . . . found to *have some concrete effect* on the plaintiff's employment status, such as a denied promotion, a differential in compensation, or termination.'" *Hare v. Potter*, 549 F. Supp. 2d 688, 692 (E.D. Pa. 2007) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 254 (1994)) (emphasis added); *see also Caviness v. Nucor-Yamato Steel Co.*, 105 F.3d 1216, 1219 (8th Cir. 1997); *Thaman v. OhioHealth Corp.*, No. 2:03-CV-210, 2005 WL 8161362, at *9 (S.D. Ohio Nov. 29, 2005) ("Plaintiff is correct that damages such as back pay, lost benefits and front pay are generally available remedies in a Title VII hostile work environment case.  However, in order to recover such damages, Plaintiff must establish a causal connection between the alleged harassment and her separation from employment." (citations omitted)).

Similarly, a showing of either an actual or constructive discharge appears to normally be a prerequisite to an award of lost compensation in ADEA hostile work environment cases as well.  *See* Cecily Fuhr, 92 Causes of Action 2d 207 § 27 ("[B]ack pay will not be appropriate in cases where the hostile work environment did not result in the employee's direct or constructive termination, or in any loss of compensation."); *cf. Barton v. Zimmer, Inc.*, 662 F.3d 448, 454 (7th Cir. 2011) (holding, in the context of an ADEA discrimination claim, that "[the Plaintiff] was not fired and his compensation was not reduced, so an award of back pay is unavailable").  But while back pay or other lost compensation awards under Title VII are equitable in nature, back pay under the ADEA is a legal remedy and properly determined by the jury.  *See Klotzbach-Piper III*, 2022 WL 7002841, at *3 n.2.  Meanwhile, "[n]early all of the circuits that have considered front pay under the ADEA treat the remedy as wholly equitable, leaving both the availability and amount of front pay to the court." *Traxler v. Multnomah Cnty.*, 596 F.3d 1007, 1013 (9th Cir. 2010) (citing cases).

In response to the Court's prior observation that "it is not clear from the record that Amtrak ever terminated Klotzbach-Piper or even that she voluntarily resigned," *Klotzbach-Piper III*, 2022 WL 7002841, at *3, Klotzbach-Piper's motion for reconsideration points the Court to a letter from Amtrak dated April 30, 2021, stating that Amtrak's Labor Relations Department had "conducted an administrative review" and updated her employment status to reflect Amtrak's denial of her certification as a locomotive engineer, Termination Letter, Ex. A to Pl.'s Mot. for Recons., ECF No. 64-2. Klotzbach-Piper further seeks to amend her Complaint so as to allege that, "[a]s a direct and proximate result" of the hostile work environment, Klotzbach-Piper "was terminated and suffered monetary damages, including, but not limited to, lost wages, lost benefits, and damage to her personal and professional reputation."[1]  Proposed Am. Compl. ¶¶ 104, 111, ECF No. 65-2. Amtrak, in turn, does not dispute that it terminated Klotzbach-Piper. *See* Def.'s Opp'n to Pl.'s Mot. for Recons. at 6. According to Amtrak, even if it "did not formally terminate [Plaintiff] until April 2021," its denial of her certification in January 2016 "effectively resulted in [her] termination" and she "lost pay and benefits as a result of [that] decision." *Id.*

The question, then, is whether Klotzbach-Piper has, per the Court's direction, made an adequate showing of a causal connection between the alleged hostile work environment and her non-certification, such that the latter might be relevant to her remaining claims and provide the basis for economic damages such as back pay or front pay under Title VII and the ADEA. In her

---

[1] Although Amtrak argues preemptively that Klotzbach-Piper has failed to show how the alleged hostile work environment may have caused a loss of compensation or benefits before any discharge, *see* Def.'s Opp'n to Pl.'s Mot. for Recons. at 6–7, Klotzbach-Piper's own motion for reconsideration focuses solely on the purported damages that resulted from her termination and does not set forth any theory of a causal connection between the alleged hostile environment and economic loss predating her non-certification, *see generally* Pl.'s Mot. for Recons. The Court therefore need not consider further whether Klotzbach-Piper has made such a showing.

motion for reconsideration, Klotzbach-Piper theorizes that, "to the extent that her performance during the certification process was less than satisfactory, it was because of the hostile work environment that she suffered under while employed by Defendant." Pl.'s Mot. for Recons. at 3. She attaches an exhibit purporting to show that she "made multiple trips to the doctor about her treatment at the hands of Amtrak." *Id.* at 4. The exhibit does appear to show several visits to a physician between August 7, 2015 and September 11, 2015, in addition to suggesting possible diagnoses of anxiety and major depressive disorder. *See* Physician's Notes, Ex. B to Pl.'s Mot. for Recons., ECF No. 64-3. But these notes do not provide any indication as to the causes of these ailments, let alone attribute them to her alleged hostile working environment.[2]

Amtrak responds that Klotzbach-Piper's "poor performance was noted in September 2014, four months after she began on-the-job training and prior to her training with her alleged harassers, Phillip Shaw and Christopher Martone, in November 2014." Def.'s Opp'n to Pl.'s Mot. for Recons. at 4. Amtrak also points out that Klotzbach-Piper "stopped training with Shaw and Martone, as a team, in February 2015." *Id.* But Amtrak is incorrect that its timeline of events necessarily negates Klotzbach-Piper's assertion of a causal link between the alleged hostile work environment and her non-certification and termination. First, Klotzbach-Piper alleges in her Complaint that she was "qualifying . . . with Shaw and Martone" as early as September 2014. Compl. ¶ 31. Second, even though Shaw was eventually replaced by Ahmed,

---

[2] Amtrak has attached what appears to be a more complete version of this medical status report, *see* Treating Physician Med. Status Rep. Statement of Disability, Ex. A to Def.'s Opp'n to Pl.'s Mot. for Recons., ECF No. 70-1, and cites to it in claiming that "Klotzbach-Piper's healthcare provider considered [h]ypothyroidism as a cause of her anxiety/mood disorder," Def.'s Opp'n to Pl.'s Mot. for Recons. at 4. The Court does not opine on whether Amtrak's assertion is correct, but observes that the notes do not explicitly connect the possible hypothyroidism to Klotzbach-Piper's anxiety or other ailments. *See* Treating Physician Med. Status Rep. Statement of Disability, Ex. A to Def.'s Opp'n to Pl.'s Mot. for Recons.

she continued to be trained by Martone, whose "comments continued" even after Shaw's departure. *Id.* ¶¶ 45–46.

Nevertheless, the Court concludes that Klotzbach-Piper still has not demonstrated what "concrete effect," if any, the alleged hostile environment had on her non-certification and termination. *Landgraf*, 511 U.S. at 254. Klotzbach-Piper's motion for reconsideration merely reiterates the allegations in her Complaint about how she was mistreated by Shaw and Martone—all of which was already available to the Court when it issued its prior decision explaining that Klotzbach-Piper would need to provide evidentiary support for her theory of causation. After additional briefing, Klotzbach-Piper still has not weaved the necessary connective tissue between Shaw and Martone's conduct, her ailments, and her non-certification. The record continues to reflect only that, even after what appears to have been the height of the alleged harassment—when she trained with both Shaw and Martone—and though certain colleagues then helpfully gave Klotzbach-Piper additional training, *see* Compl. ¶¶ 45, 50, her scores remained middling and insufficient for certification in the view of at least one of the colleagues who tried to help her, *see* Ex. 11 to Pl.'s Dep. Without more, Klotzbach-Piper has not met her burden to show "that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied." *Westrick*, 893 F. Supp. 2d at 268. Thus, the Court denies Klotzbach-Piper's motion for reconsideration.[3]

---

[3] Klotzbach-Piper argues that it is "well-settled that the issue of calculating back pay and similar relief [under the ADEA] is a legal remedy that should be put before a jury." Pl.'s Mot. for Recons. at 5. As the Court explains above, back pay, front pay, and lost benefits under Title VII and front pay under the ADEA are equitable remedies, while back pay under the ADEA is a legal remedy. *See supra*, at 9–10. In such a case involving both legal and equitable remedies, "the appropriate method of proceeding" would generally involve "submission of the case first to the jury to resolve liability and all legal damages," after which a court would then "conduct[] a trial in equity to resolve all issues of equitable relief." *Sailor v. Hubbell, Inc.*, 4 F.3d 323, 325 (4th Cir. 1993) (quoting *Duke v. Uniroyal Inc.*, 928 F.2d 1413, 1422 (4th Cir. 1991)).

### B.  Motion to Amend Complaint

Klotzbach-Piper seeks leave to amend her Complaint "solely to clarify that she was in fact terminated by Defendant and the hostile work environment was the cause of said termination." Pl.'s Mot. to Amend at 2.  Having denied Klotzbach-Piper's motion for reconsideration, the Court concludes that permitting such an amendment to the Complaint would be "futile." *De Sousa*, 840 F. Supp. 2d at 113.  Moreover, Klotzbach-Piper seeks leave to amend her Complaint based on a letter dating from April 2021—over two years ago—and after both the close of discovery and the trial date originally set for this matter.  Allowing Klotzbach-Piper to amend her Complaint now would be untimely and present undue delay.  *See Norris*, 746 F. Supp. 2d at 3.  Accordingly, the Court denies Klotzbach-Piper's motion to amend her Complaint.

---

But the Court also notes that "summary judgment is not altogether precluded on issues that are typically questions of fact for the jury." *Nat'l Org. for Marriage, Inc. v. United States*, 24 F. Supp. 3d 518, 526 (E.D. Va. 2014) (citing cases in context of awarding summary judgment on punitive damages claim); *see also Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 795 (7th Cir. 2014) ("Legal damages, like liability, can be determined via the summary judgment mechanism.").  Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Moreover, a court may enter summary judgment against a party *sua sponte* "so long as the losing party was on notice that she had to come forward with all her evidence." *McBride v. Merrell Dow & Pharms., Inc.*, 800 F.2d 1208, 1212 (D.C. Cir. 1986).

Here, the Court in its previous opinion put Klotzbach-Piper on notice that she needed to put forward all of her evidence supporting her theory as to how the alleged hostile environment caused her non-certification and termination because she had not, beyond raising the mere allegation of such a causal connection, shown evidence of such.  *See Klotzbach-Piper III*, 2022 WL 7002841, at *4.  Upon reviewing the evidence in the record and Klotzbach-Piper's new motions and exhibits, and for the reasons given for its denial of the motion for reconsideration, the Court concludes that Klotzbach-Piper has not here raised any genuine issue of material fact that would properly be questions for the jury.  Accordingly, the Court would, in the alternative to denying Klotzbach-Piper's motion for reconsideration, grant summary judgment in Amtrak's favor as to Klotzbach-Piper's claims seeking back pay, front pay, or pension losses under Title VII and the ADEA.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Reconsider (ECF No. 64) and Plaintiff's

Motion to Amend the Complaint (ECF No. 65) are **DENIED**.  An order consistent with this

Memorandum Opinion is separately and contemporaneously issued.

Dated:  May 31, 2023                                             RUDOLPH CONTRERAS
                                                                United States District Judge